**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**GORDON GRADO, M.D., et al.,**

**Plaintiffs,**

**v.**

**MEDICAL, INDUSTRIAL, AND SCIENTIFIC PRODUCTS CORPORATION, et al.,**

**Defendants.**

**Case No. 1:24-cv-158**

**JUDGE DOUGLAS R. COLE**

**OPINION AND ORDER**

Plaintiffs Gordon Grado, M.D., and Centro de Especialidad Oncologica (CdEO), have sued Defendants Jordan Medical Group, LLC, (JMG), and its president Suleiman A. Refaei, as well as Medical, Industrial, and Scientific Products Corporation (MIS), and its president Jose Rodriguez in tort and contract for Defendants' failure to deliver a linear accelerator machine (LINAC). JMG and Refaei have moved to dismiss claiming that (1) the res judicata effect of a prior judgment in a different suit that MIS (the other defendant here) prosecuted against them involving the same transaction bars CdEO's current claims against them, (2) CdEO lacks standing to sue, and (3) Refaei is not a proper defendant.

For the reasons explained below, the Court concludes that CdEO has standing to sue, Grado and CdEO have alleged valid claims against Refaei, and that several of these claims are not precluded based on the prior MIS and Rodriguez suit (although others are). As a result, the Court **GRANTS IN PART AND DENIES IN PART**

JMG's and Refaei's Motion to Dismiss for Failure to State a Claim (Doc. 20). Specifically, the Court **DISMISSES WITH PREJUDICE** the promissory estoppel (Count IV), unjust enrichment (Count V), trespass to chattel (Count VI), and conversion (Count VII) claims in the Amended Complaint (Doc. 11) against JMG and Refaei.

## BACKGROUND[1]

Grado owns and operates CdEO, a Mexican company running oncology centers in Mexico. Grado sought to obtain a LINAC machine to help treat CdEO's cancer patients. (Doc. 11 ¶¶ 1–2, 9–10, 30, #73–74, 78). In the past, Grado tried to work with JMG and Refaei as a source for fulfilling his medical equipment needs. (*Id.* ¶ 16, #76). But JMG and Refaei had proven unreliable. (*Id.* ¶ 17, #76). So Grado instead contracted with MIS and Rodriguez for a LINAC machine, based on Rodriguez's representation to Grado and CdEO that MIS owned a LINAC in good working condition that it could deliver immediately upon sale. (*Id.* ¶¶ 11, 13, #75; Doc. 11-1).[2]

Unbeknownst to Grado and CdEO, MIS and Rodriguez instead were acting as brokers for JMG and Refaei. That is, MIS and Rodriguez were planning to sell JMG's and Refaei's LINAC machine to Grado (who would then in turn transfer it to his

---

[1] Because this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

[2] Plaintiffs attached this contract (and two others) to their pleadings. Though the Court must generally confine its review to just the allegations at the motion-to-dismiss stage, it may still rely on these documents because they are written instruments that are expressly referenced in the Amended Complaint and that serve as the basis for Plaintiffs' claims. *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *1 n.3 (S.D. Ohio Jan. 4, 2024); Fed. R. Civ. P. 10(c).

company CdEO). (Doc. 11 ¶¶ 12, 20–26, #75–77). To accomplish this one-two, MIS and Rodriguez signed a purchase agreement with JMG and Refaei that governed the sale of the LINAC from JMG (and Refaei) to MIS (and Rodriguez), and another agreement where JMG and MIS agreed with each other that they had "joined efforts to sell a [LINAC] to … Grado … for a project in the city of Aguascalientes[,] [] Mexico"—the new oncology clinic Grado and CdEO planned to open. (*Id.* ¶¶ 2, 24–25, #73, 77; Docs. 11-2, 11-3); *see supra* note 2. Defendants' joint venture to sell a LINAC to Grado occurred despite Grado's expressly informing MIS and Rodriguez that he did not want to do any further business with JMG and Refaei. (Doc. 11 ¶¶ 18–19, #76). In any event, based on MIS's and Rodriguez's (mis)representing that they owned the LINAC they were selling, Grado executed a purchase agreement with MIS to personally purchase the LINAC and paid the full price for it. Grado's plan was to transfer the LINAC to CdEO when it was delivered to him. (*Id.* ¶¶ 13–15, 30, #75, 78; Doc. 11-1). MIS and Rodriguez accepted these payments and paid some of the funds to JMG and Refaei. (Doc. 11 ¶ 27, #77).

Rather than deliver the LINAC as agreed, though, JMG and Refaei sought another $25,000 (though the Amended Complaint does not make clear of whom they demanded this additional payment). (*Id.* ¶ 28, #77). And not only did no Defendant deliver the LINAC to Grado or CdEO, but no one refunded any money either. (*Id.* ¶ 29, #77). As a result, Grado and CdEO allege that (1) they had to buy another LINAC to replace the one they were to receive under their contract with MIS and

Rodriguez, and (2) the delay in obtaining that replacement machine caused Grado and CdEO to lose business and clientele. (*Id.* ¶ 30, #78).

For these harms, on March 25, 2024, Grado and CdEO brought this action raising several contract and tort claims against all four Defendants.[3] (Compl., Doc. 1). Against MIS and Rodriguez (the counterparties to Grado's contract) alone, Grado and CdEO raised claims for breach of contract (Count I), fraudulent inducement (Count II), and negligent misrepresentation (Count III). (*Id.* ¶¶ 31–49, #78–81). Against all four Defendants, Grado and CdEO raised claims for promissory estoppel (Count IV), unjust enrichment (Count V), fraudulent misrepresentation over the proper ownership of the LINAC machine (Count VIII), and civil conspiracy (Count X). (*Id.* ¶¶ 50–59, 69–75, 82–85, #81–82, 84–85, 86–87). Against just JMG and Refaei (the LINAC owners, but parties with whom Grado had no direct contract), Grado and CdEO raised claims of trespass to chattel (Count VI), conversion (Count VII), and tortious interference with contract (Count XI). (*Id.* ¶¶ 60–68, 86–90, #82–84, 87). And finally, against MIS, Rodriguez, and JMG, Grado and CdEO raised a breach-of-contract claim (Count IX) for Defendants' breach of the agreement recognizing Grado as the third-party beneficiary of the transfer of the LINAC from JMG and Refaei to MIS and Rodriguez. (*Id.* ¶¶ 76–81, #85–86).

[3] Four days after filing suit and before any party had been served, Plaintiffs amended their Complaint under Rule 15(a)(1) by filing the operative Amended Complaint. (Doc. 11).

MIS and Rodriguez have just recently been served. (Docs. 30, 31). But JMG and Refaei were served some months back, (Docs. 16, 17), and they have moved to dismiss. (Doc. 20).

Their main argument turns on their belief that this suit fails due to the res judicata effect of a judgment in a prior contract action that MIS (the company acting as the middleman) brought against JMG and Refaei (who actually owned the LINAC).[4] (*Id.* at #117). That MIS suit, which the company filed on July 29, 2021, arose out of the same set of facts and involved several contract and tort claims arising out of JMG's and Refaei's failure to deliver the LINAC to MIS as agreed in the contract between them. (Compl., *Med., Indus. & Sci. Prods., Inc. v. Jordan Med. Grp., LLC*, No. 1:21-cv-555 (S.D. Ohio Aug. 27, 2021), Doc. 2). After some initial motions practice (that never resulted in a ruling), the Court dismissed with prejudice MIS's action against JMG and Refaei for failure to prosecute per Federal Rule of Civil Procedure 41(b). (Order Dismissing Action for Failure to Prosecute, *Med., Indus. & Sci. Prods., Inc. v. Jordan Med. Grp., LLC*, No. 1:21-cv-555 (S.D. Ohio Oct. 18, 2022), Doc. 22). And that Rule 41(b) dismissal was then reduced to a judgment. (J. in a Civil Case, *Med., Indus. & Sci. Prods., Inc. v. Jordan Med. Grp., LLC*, No. 1:21-cv-555 (S.D. Ohio Oct. 18, 2022), Doc. 23). JMG and Refaei maintain that judgment precludes all Plaintiffs' claims—even though neither Grado nor CdEO were parties to MIS's action. (Doc. 20, #120–25).

[4] The Court "may take judicial notice of proceedings in other courts of record." *Dates v. HSBC*, ___ F. Supp. 3d ___, 2024 WL 860918, at *1 n.1 (S.D. Ohio 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

On top of believing that the judgment in that previous action bars Grado and CdEO's claims against them now, JMG and Refaei raise two other arguments. First (although failing to cite Rule 12(b)(1)), they argue that CdEO lacks standing to bring this suit. (*Id.* at #125–26). Beyond that they contend that Refaei is not a proper defendant because he is sued in his individual capacity for actions he took on behalf of JMG. (*Id.* at #126). Plaintiffs have opposed this motion in full, (Doc. 23), and JMG and Refaei have since replied, (Doc. 26). The matter is now ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quotation omitted). But while well-pleaded allegations are accepted as true, they are just that—allegations.

A court analyzing a motion to dismiss generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). But if "a document is referred to in the pleadings and is integral to the claims, it may be considered

without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). These "written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). "[T]hey often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.* (cleaned up). "Even so, a court will not credit a document attached to a motion to dismiss [or other briefing] that is not integral to or referenced in the complaint, or is otherwise unlike quintessential examples of written instruments—for example, when the exhibit is unsigned and undated (i.e., lacks self-verifying qualities)." *Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *2 (S.D. Ohio Feb. 7, 2024) (cleaned up).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). If the defendant "does not contest the facts in the complaint" when challenging the district court's subject-matter jurisdiction, the motion is construed as bringing only a facial attack. *Morgan v. U.S. Dep't of Educ.*, 596 F. Supp. 3d 1023, 1026 (S.D. Ohio 2022). "When evaluating a facial attack to the court's subject-matter jurisdiction, the Court accepts all material allegations as true and construes the Complaint in the light most favorable to the plaintiff." *Revel Sys., Inc. v. Frisch's Rests., Inc.*, No. 1:23-cv-507, 2024 WL 1406107, at *3 (S.D. Ohio Apr. 2, 2024) (citing *Ritchie*, 15 F.3d at 598). "Put another way, a facial attack on the pleading

for a want of subject-matter jurisdiction mirrors the standard of review on a motion brought under Rule 12(b)(6)." *Id.* (cleaned up).

## LAW AND ANALYSIS[5]

Before diving into the analysis, the Court finds a roadmap is in order. JMG and Refaei focus most of their briefing on res judicata and raise their standing argument against CdEO only as an "alternative" basis for dismissal. (Doc. 20, #117, 125). But standing is jurisdictional and cannot be an "alternative" basis for the Court's resolution of a case—it must be addressed before any merits arguments, including res judicata, which is an affirmative defense, *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998). So the Court starts with standing and concludes that CdEO has standing to pursue its claims against JMG and Refaei. With that threshold issue out of the way, the Court proceeds to address the argument that Refaei is not a proper Defendant. (Doc. 20, #126). This is the logical next step because it is a discrete issue that can easily be assessed by reviewing the Amended Complaint without reference

[5] The parties both assume Ohio contract law applies to all claims in the Amended Complaint without engaging in a conflict-of-law analysis. (Doc. 20, #120–21; Doc. 23, #139–40). "Without delving too deeply into the issue, given no party suggested any other state's law should apply," the Court concludes (for this motion) that under Ohio conflict-of-law principles, Ohio law may properly apply to this suit. *Feldkamp Enters., Inc. v. Mass. Mut. Life Ins.*, No. 1:23-cv-407, 2024 WL 1930700, at *5 n.3 (S.D. Ohio May 1, 2024). Namely, given this matter arises out of the Ohio Defendants' (JMG's and Refaei's) refusal to deliver the LINAC, it is reasonable to conclude that the harms arose from actions occurring here in Ohio, which makes Ohio the forum with the most significant relationships to Plaintiffs' claims. *Dawson v. Allstate Vehicle & Prop. Ins.*, No. 1:22-cv776, 2024 WL 22735, at *3 (S.D. Ohio Jan. 2, 2024). This decision to apply Ohio law "is subject to revision and reconsideration should the parties choose to raise it at a later date." *CP-1005 Gilbert Ave., LLC v. Greyhound Lines, Inc.*, No. 1:23-cv-727, 2024 WL 957729, at *6 (S.D. Ohio Mar. 6, 2024).

to the prior suit or the more involved res judicata issue. Finding that Refaei may properly be sued at this stage of the litigation, the Court then turns to analyzing the claim preclusion arguments that serve as the heart of this matter.

## A. Standing[6]

JMG and Refaei raise a single argument about standing: they claim CdEO has not established itself as a third-party beneficiary of the transfer of the LINAC from JMG and Refaei to MIS and Rodriguez and therefore necessarily cannot have standing to pursue these claims. (*Id.* at #125). To have standing to sue, a party must satisfy three elements: an injury in fact, causation, and redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Each are easily met here based on the pleadings. As alleged, Grado sought to open a CdEO-operated oncology center in Aguascalientes, at which location he would install the LINAC machine purchased

---

[6] The only jurisdictional issue raised in the parties' papers is standing. But as the Court must ensure it has jurisdiction over a suit in all respects, it may raise other subject-matter jurisdiction issues sua sponte. *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 268 (6th Cir. 2007). The Court raised such a concern here as to the parties' citizenship. (9/3/24 Not. Order). Plaintiffs invoked the Court's diversity jurisdiction as the basis for its authority over the matter. (Doc. 11 ¶ 7, #74). But the allegations in the Amended Complaint did not clearly establish JMG's citizenship given it contains contradictory indicators as to whether JMG is a corporation or an LLC. (*See* Doc. 11). Moreover, as the Court noted, the allegations did not provide the citizenship of JMG's members were it properly denominated an LLC—details necessary to establish an LLC's citizenship. (9/3/24 Not. Order (citing *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009))). So the Court ordered JMG to file a Rule 7.1 disclosure statement, (*id.*), which it did on September 4, 2024, (Doc. 27). Given JMG represents that it is in fact an LLC with only one Ohio member, (*id.* at #196), the Court finds that there is complete diversity between Grado and the domestic defendants MIS, JMG, and Refaei. And even though it appears that Rodriguez has been domiciled in Brazil since October 2023, (Doc. 24-2, #173–77), which implies that there are alien parties on both sides of the v. in this suit (CdEO and Rodriguez), the Court still properly has jurisdiction under 28 U.S.C. § 1332(a)(3), given this matter is between "citizens of different states and in which citizens or subjects of a foreign state are additional parties." *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 495–96 (3d Cir. 1997).

through MIS and Rodriguez. (Doc. 11 ¶¶ 2, 9, #73–74). The delivery of that LINAC machine fell through allegedly because JMG and Refaei withheld the machine to obtain additional money. (*Id.* ¶ 28, #77). And because of delays in obtaining this equipment, CdEO lost business and clientele who would have received treatment at CdEO's Aguascalientes oncology center. (*Id.* ¶ 30, #78). In other words, CdEO lost business (a standard financial injury in fact) because of JMG's and Refaei's actions, which can be redressed (like most financial injuries) by an award of damages. *Cf. Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 712 F. Supp. 3d 1017, 1025 (S.D. Ohio 2024). Thus, CdEO has standing to sue.

JMG and Refaei object contending that the agreements attached to the Amended Complaint do not demonstrate that CdEO "was an intended third-party beneficiary" of the LINAC transfer between Defendants and that CdEO is "not a real party in interest" as a result. (Doc. 20, #126). But that objection "implicates Federal Rule of Civil Procedure 17, not Article III." *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 731 (6th Cir. 2016). What JMG and Refaei truly are arguing about is "to whom Ohio law provides a legal right of enforcement." *Id.* So their challenge to CdEO's standing to sue fails.

Admittedly, they could also be understood to be objecting under Rule 17 to CdEO's inclusion in this suit. (Doc. 20, #126 (fixating on who is the real party in interest)). But assuming such an argument was raised, it would also fail. First, when the allegations in the Amended Complaint are construed in Plaintiffs' favor (which JMG and Refaei do not do in challenging CdEO's inclusion here), the Court finds that

Plaintiffs have adequately alleged that CdEO was an intended beneficiary of Defendants' transfer agreement. That agreement refers to Grado's "project in the city of Aguascalientes," (Doc. 11-2, #95), which the Amended Complaint alleges refers to the CdEO oncology center Grado planned to open, (Doc. 11 ¶¶ 2, 24, #73, 77). So Plaintiffs have plausibly alleged that CdEO was an intended third-party beneficiary of the contract between the LINAC owner and the middleman. Even assuming CdEO were not, though, this argument boils down to JMG's and Refaei's identifying *prudential* concern about CdEO's exercising a third party's (Grado's) rights by suing Defendants. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir. 2021). But given Grado (who JMG and Refaei do not challenge as the real party in interest) is also a party to this suit, CdEO's purported exercise of Grado's rights does not raise a cause for concern or dismissal. Rule 17 expressly contemplates that a suit can be prosecuted both by the real party in interest and the party exercising the real party in interest's rights. Fed. R. Civ. P. 17(a)(3) (allowing the real party in interest only to "join" the action, after which "the action proceeds as if it had been originally commenced by the real party in interest"). Simply, any issue about what allocation of the ultimate recovery of this suit (if any) should be paid to Grado rather than CdEO can be sorted out between them at a later date, independent of this action. *Cf. Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 280–81 (2008) (highlighting historical examples permitting an assignee to sue on behalf of an assignor's interests even though the assignee would ultimately be required to

"account to the assignor" for the amount recovered (collecting cases)). JMG and Refaei fail to persuade that CdEO must be dismissed from this action.[7]

## B. Allegations Against Refaei

Next, Refaei argues that he should be dismissed from the suit because Plaintiffs seek to hold him liable for actions he took as a member of JMG and that this is impermissible under Ohio law. (Doc. 20, #126 (citing Ohio Rev. Code § 1706.26)). The Court agrees with Refaei that § 1706.26 generally prevents courts from holding an LLC's member individually liable for actions he took as the LLC's agent. But the Court cannot credit Refaei's attempt to infer from the allegations that Plaintiffs are seeking to hold him liable for JMG's actions. Rather, at the motion-to-dismiss stage, the Court must view the allegations in the Amended Complaint in the light most favorable to Plaintiffs. And, in that light, all allegations discussing Refaei's actions are best understood as alleging that he took personal actions that harmed Plaintiffs. (Doc. 11 ¶¶ 12, 21, #75–76 (describing Refaei as an owner of the LINAC); *id.* ¶¶ 22–23, #76 (alleging Refaei withheld information from Grado); *id.* ¶ 27, #77 (alleging that Refaei personally received some of Grado's payment for the LINAC); *id.* ¶¶ 28, 29, #77 (alleging that Refaei demanded additional payment and refused to deliver the LINAC)).

Certainly, that the contracts between Defendants listed JMG as a party to that agreement creates an inference that after discovery Refaei will be able to show that

[7] JMG and Refaei raise several merits-based arguments as to why CdEO's claims would fail as a matter of law under state law in their reply brief. (Doc. 26, #192–93). These belated arguments are not properly before the Court, so it does not reach them. *SAT Tech., Inc. v. CECO Env't Corp.*, No. 1:18-cv-907, 2023 WL 6119934, at *3 n.7 (S.D. Ohio Sept. 19, 2023).

his actions were solely as an agent of JMG. (Docs. 11-2, 11-3). But to conclude that Refaei was JMG's agent at all relevant times, the Court must make an assumption not based on the allegations—all of which, at least interpreted in the light most favorable to Plaintiffs, speak about Refaei's personal actions. For that reason, that the contracts between Defendants involve JMG as a party alone (while creating some tension with the allegations) does not negate the inference drawn from the Amended Complaint, when read as a whole, that Refaei personally acted to Plaintiffs' detriment. *Shanghai Weston Trading Co. v. Tedia Co.*, 707 F. Supp. 3d 737, 741 n.3 (S.D. Ohio 2023) (rejecting a reading of the Complaint premised on drawing an inference that was not in the plaintiff's favor). Simply, Refaei's argument that he acted only in the capacity as JMG's agent does not carry weight, as it turns on facts outside the record—as shown by Refaei's belief that his dismissal is compelled by the fact that "the only evidence presented by Plaintiffs" are the contracts discussed in the Amended Complaint. (Doc. 20, #126). As the Court does not concern itself with evidence or with facts outside the pleadings to rule on a motion to dismiss, *see Shanghai Weston*, 707 F. Supp. 3d at 743 n.4, it finds that the allegations in the Amended Complaint plausibly allege that Refaei took the complained-of actions in his personal capacity and thus is individually liable for the failure to deliver the LINAC and the misrepresentations that harmed Plaintiffs.[8] Refaei is free to re-raise

[8] The Court also notes that another reason to reject Refaei's argument is that "alternative pleading is permissible under federal law," which permits a party to plead two contradictory theories "without negating the validity of either, at least so long as" the allegations provide a plausible factual basis for the theories themselves. *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1029 (S.D. Ohio 2021) (citing Fed. R. Civ. P. 8(d)); *see Morgeson v. Freeman*, No. 1:23-cv-269, 2024 WL 1406105, at *5 (S.D. Ohio Apr. 2, 2024) (rejecting an alternative theory

this (currently premature) argument at the summary judgment stage with reference to the evidence on which he is implicitly relying to make this argument.[9]

## C. Res Judicata

Having concluded that both CdEO and Refaei are proper parties to the suit, the Court turns to the key focus of JMG's and Refaei's motion to dismiss: that the claim-preclusive effect of the dismissal with prejudice in the MIS suit bars this action from going forward.

"[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). "But while federal common law 'governs' the claim-preclusive effect in the sense that federal law provides the source of authority, *see* U.S. Const. Art. VI, the Supreme Court also made clear in *Semtek* that the *substance* of that federal rule is this: a dismissal in a diversity case is entitled to the same preclusive effect 'that would be applied by state courts in the State in which the federal diversity court sits.'" *Eagle Express, Inc. v. Paycor, Inc.*, __ F. Supp. 3d __, 2024 WL 1874966, at *3 (S.D.

---

raised in a Complaint because "there [we]re no non-conclusory allegations in [the] Complaint" supporting the plaintiff's alternate legal theory). Here, based on the allegations in the Complaint, it is plausible that *either* JMG *or* Rafaei owned the LINAC, and Grado can proceed on both alternative theories at the motion-to-dismiss stage.

[9] In his reply, Refaei changes tacks and raises new arguments about the sufficiency of Plaintiffs' allegations of fraud to "pierce the corporate veil." (Doc. 26, #193–95). Again, these arguments raised for the first time in the reply are not technically before the Court. *See supra* note 7. But even so, Refaei's new argument still boils down to the same premise: he was acting as JMG's agent at all relevant times. For the reasons explained above, Refaei does not ground this premise in the pleadings, which means it relies on facts not properly before the Court on a motion to dismiss. Accordingly, the Court declines to analyze those issues because the plausible inferences drawn from the Amended Complaint permit the Court to conclude for the purposes of a Rule 12(b)(6) motion that Refaei has been sued for his personal actions. These matters are better left for exploration after discovery.

Ohio 2024) (quoting *Semtek*, 531 U.S. at 508). "In short, as a matter of federal law, the federal diversity court's dismissal obtains whatever claim-preclusive effect it would have had as a matter of state law, had the dismissal instead occurred in a state court located in the state in which that federal court sits." *Id.* The MIS suit was dismissed by this Court, so Ohio claim-preclusion rules apply.

Under Ohio law, a party seeking to invoke res judicata must make a showing on these four elements: (1) a final decision on the merits; (2) the prior action involved the same parties (or their privies) as the parties currently before the Court; (3) the current action raises "claims that were or could have been litigated in the first action"; and (4) both actions "arise out of the same transaction or occurrence." *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 869–70 (6th Cir. 2021) (cleaned up). No one disputes that the prior dismissal of the MIS suit satisfies the first prong. (Doc. 20, #121; Doc. 23, #140 n.5); *Crittendon v. Crittendon*, 612 N.E.2d 759, 761 (Ohio Ct. App. 1992). So the issue is whether the three other elements are met here, which the Court will take in reverse order.

Start with the easiest prong: the fourth. The two matters both arise out of the same transaction or occurrence. This matter turns on JMG's and Refaei's failure to deliver a LINAC device to MIS and Rodriguez. (*See* Doc. 11). That was the same principal fact pattern underlying MIS's prior suit against JMG and Refaei. (*See* Compl., *Med., Indus. & Sci. Prods., Inc. v. Jordan Med. Grp., LLC*, No. 1:21-cv-555 (S.D. Ohio Aug. 27, 2021), Doc. 2). Thus, the two suits have an obvious "logical relation[ship]." *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1133

(6th Cir. 2022) (quoting *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994)). Plaintiffs object by pointing to distinct facts that are relevant to its claims against Defendants. (Doc. 23, #148 (discussing their conspiracy claim and their purchase agreement with MIS and Rodriguez)). But *that* is an argument about whether the claims could have been raised in a prior action, not whether the factual pattern underlying both suits overlap. And as both suits involve the same (failed) transaction—the delivery (or not) of the LINAC—the two suits arise out of the same transaction or occurrence. *Bus. Dev. Corp. of S.C.*, 37 F.4th at 133 (cleaned up) ("[S]uits asserting different legal theories, relying on different evidence, or seeking different remedies can arise from the same 'transaction' if they concern the same general fact pattern." (citation omitted)).

The resolution of the remaining two prongs turns on the nature of the claims alleged. As a reminder, Plaintiffs raised eight claims against JMG and Refaei: claims for (1) promissory estoppel (Count IV), (2) unjust enrichment (Count V), (3) trespass to chattel (Count VI), (4) conversion (Count VII), (5) fraudulent misrepresentation over the proper ownership of the LINAC machine (Count VIII), (6) breach of the agreement recognizing Grado as the third-party beneficiary of the transfer of the LINAC (Count IX), (7) civil conspiracy (Count X), and (8) tortious interference with contract (Count XI). (Doc. 11).

#### 1. Claims that Were or Could Have Been Raised

The Court turns first to prong three, which asks whether the claims raised in the current suit were or could have been raised in the prior lawsuit. Several of these

claims were or could have been raised previously. Start with the (relevant) claims raised in both suits: like Plaintiffs here, MIS sued JMG and Refaei for conversion of the LINAC, unjust enrichment for failure to return the monies paid for the transfer of the LINAC, and tortious interference with MIS's contract with Plaintiffs. (Compl. at 5–7, 13–17, *Med., Indus. & Sci. Prods., Inc. v. Jordan Med. Grp., LLC*, No. 1:21-cv-555 (S.D. Ohio Aug. 27, 2021), Doc. 2). All three of these claims were all patterned on nearly identical allegations Plaintiffs currently raise about JMG's and Refaei's withholding of the LINAC despite being obligated to transfer title.

What else could have been raised? The answer is any related theory of substantive law that equally arises from the same factual background that existed at the time of the previous suit. *Grava v. Parkman Twp.*, 653 N.E.2d 226, 230 (Ohio 1995); *see Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997). So, for example, not only could MIS have raised a conversion claim, but it also could have raised a related trespass to chattel claim regarding the same failure to deliver the LINAC. And while MIS focused on unjust enrichment, it could have also raised a related promissory estoppel claim—MIS could have alleged that it reasonably relied on promises made by JMG and Refaei that the latter would deliver a LINAC in good working condition and that they never made good on those promises. Finally, as a party to the agreement recognizing Grado as a third-party beneficiary of the sale of the LINAC from JMG and Refaei, MIS also could have raised a claim for breach of that agreement in the prior suit. *Laurent v. Flood Data Serv., Inc.*, 766 N.E.2d 221, 225 (Ohio Ct. App. 2001).

Plaintiffs object to this finding by claiming that they allege slightly distinct facts from the prior suit (i.e., the facts dealing with the transfer of the LINAC from the arrangement set up between MIS and Rodriguez on the one hand and JMG and Refaei on the other to Plaintiffs) and that they seek a different damages award amount. (Doc. 23, #146–47). But that is not the question. Rather, the Court must assess whether the legal issue could have been raised in the previous suit because it turns on the same factual basis (whether the gravamen of the two suits is the same). *Grava*, 653 N.E.2d at 230. "In other words, two suits litigate the same claim if they request relief for the same alleged legal *harm*." *GP Vincent II v. Est. of Beard*, 68 F.4th 508, 526 (9th Cir. 2023) (Bea, J., concurring in the judgment). So neither the magnitude nor the type of the relief requested makes a claim distinct.[10] And that Plaintiffs add facts (largely noting the downstream effect of JMG's and Refaei's refusal to deliver the LINAC to MIS and Rodriguez) does not automatically convert the prior claims into distinct issues. Instead, the Court must determine whether the extra details materially alter the legal harm alleged.

Plaintiffs' claims for conversion, trespass to chattel, unjust enrichment, promissory estoppel, tortious interference with their contract with MIS and Rodriguez, and breach of the third-party beneficiary contract are all premised on the same legal harm: JMG's and Refaei's withholding of the LINAC. MIS raised that

---

[10] While Plaintiffs are correct to argue that MIS would have lacked standing to recover some of the damages Plaintiffs faced, (Doc. 23, #147), they are essentially making *privity* arguments, not arguments that the legal issues previously litigated were distinct from those currently raised in the Amended Complaint.

same harm in its prior suit. Therefore, these claims were or could have been litigated previously.

By contrast, that means that Plaintiffs' civil conspiracy claim and fraudulent misrepresentation claim (over who held title to the LINAC) could not have been litigated in the prior lawsuit. For both, Plaintiffs claim that all Defendants took actions collectively that harmed Plaintiffs' interests (that is to say, Plaintiffs allege that, via omissions and representations, Defendants implied Plaintiffs would receive the LINAC but never followed through). The Court agrees with Plaintiffs that it would make little sense for a party to a conspiracy to sue a co-conspirator for the harms the conspiracy (of which they both were a part) caused to a third party—that would be the legal equivalent of cutting off one's nose to spite one's face. (*See* Doc. 23, #146). JMG and Refaei do not respond to this argument. Nor could they given these conspiracy-esque claims are quintessential examples of legal harms turning on a materially distinct factual basis (namely, that Defendants collectively and collusively acted to harm Plaintiffs) that is fodder for a separate suit.

Altogether, the Court finds that Plaintiffs' fraudulent misrepresentation (Count VIII) and civil conspiracy (Count X) claims were not and could not have been litigated previously. Thus, they are not precluded from being litigated here.

### 2. Privity

That leaves the other six claims against JMG and Refaei, which claims were or could have been raised in the prior suit: (1) promissory estoppel (Count IV), (2) unjust enrichment (Count V), (3) trespass to chattel (Count VI), (4) conversion

(Count VII), (5) breach of the agreement recognizing Grado as the third-party beneficiary of the transfer of the LINAC (Count IX), and (6) tortious interference with contract (Count XI). The sole question for these claims that remains is whether Plaintiffs are in privity with MIS, such that the judgment binding MIS also binds Plaintiffs—prong two of the res judicata analysis.[11]

As the Supreme Court of Ohio has explained, privity between parties is established when "a person succeeded to the interest of a party," *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007), or there is a mutuality of interests such that the parties to the two suits raise the "same legal rights," *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009) (cleaned up). Put differently, a party is in privity if it reaches through the prior litigant to assert (what would effectively be the prior litigant's) interests against the defendant. *See Brown v. Dayton*, 730 N.E.2d 958, 962 (Ohio 2000). Here, some claims involve Plaintiffs reaching through MIS to hold JMG and Refaei liable.

Start with the easy claims—conversion and trespass to chattel. Plaintiffs allege that JMG and Refaei were to transfer the LINAC to MIS and Rodriguez, who in turn were meant to transfer it to Plaintiffs. (Doc. 11 ¶¶ 21, 24–26, 28, #76–77). In other words, Plaintiffs' title to the LINAC succeeded to MIS's and Rodriguez's title. And that means Plaintiffs' attempt to vindicate its title (which is inferior in the chain of title to that of MIS and Rodriguez) via the conversion or the trespass to chattel claim necessarily reaches *through* the rights held by MIS and Rodriguez. *Wright v.*

[11] No one disputes that JMG and Refaei were defendants in the prior MIS action and are therefore bound to its judgment. (Doc. 20, #119; Doc. 23, #138).

*Heller*, 102 N.E.3d 1285, 1293 (Ohio Ct. App. 2018) (cleaned up) ("Successive ownership interests in the same property are sufficient to sustain the flow of privity."); *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("Qualifying [privity] relationships include, but are not limited to, preceding and succeeding owners of property."); *cf. GP Vincent II*, 68 F.4th at 522–23 (Bea, J., concurring in the judgment) (explaining that when a prior suit adjudicates "those rights associated with the property itself," which is also known as "*in rem* liability," successive property owners are bound to the prior judgment). Because title to the LINAC, which gives rise to Plaintiffs' claims of conversion and trespass to chattel, establishes privity between Plaintiffs and MIS, the res judicata effect of the dismissal in the prior action bars these two claims.

This logic similarly requires finding that Plaintiffs are in privity with MIS with respect to the promissory estoppel and unjust enrichment claims.

Take the promissory estoppel claim. Plaintiffs allege they did not know that the LINAC was owned by JMG and Refaei nor that MIS and Rodriguez sought to fulfill their contractual obligations to Plaintiffs through an arrangement with JMG and Refaei. (Doc. 11 ¶¶ 20, 23, #76). In other words, any promises by JMG and Refaei (implied or express) on which Plaintiffs relied to conclude they would receive delivery of LINAC must have been conveyed *through* MIS. Were it to the contrary, Plaintiffs would have known of JMG's and Refaei's involvement in this transaction. But that means Plaintiffs are relying on any promises (implied or otherwise) that JMG and Refaei made to MIS that were then relayed to Plaintiffs. And *that* reveals that

Plaintiffs are trying to vindicate the rights MIS had against JMG and Refaei. *Fender v. Miles*, 923 N.E.2d 631, 635 (Ohio Ct. App. 2009) (describing an insurer's interest in holding another motorist at fault as being "identified in interest" with the insured given the latter sought to vindicate the same legal position). Plaintiffs are reaching through MIS to assert their promissory estoppel claim against JMG and Refaei. Accordingly, Plaintiffs are in privity with MIS for the promissory estoppel claim (which is thereby precluded because it could have been raised in the prior suit).

The same goes for the unjust enrichment claim. Not only were Plaintiffs unaware that JMG and Refaei contributed to this transaction, but JMG and Refaei received money (from Plaintiffs) *only because* MIS passed some of those funds along. (Doc. 11 ¶ 27, #77). In other words, Plaintiffs' claim that JMG and Refaei were unjustly enriched when they took Plaintiffs' money and did not transfer the LINAC is derivative of MIS's claim raising the same issue—paying JMG and Refaei money without the transfer of the LINAC. Plaintiffs cannot reach out and hold JMG and Refaei liable under an unjust enrichment theory without seeking to subrogate themselves to MIS's claim seeking the same result. *Brown*, 730 N.E.2d at 962 (explaining that under Ohio's broad definition of privity for res judicata purposes, all that is necessary is a "mutuality of interest, [which] includ[es] an identity [as to the] desired result"). Thus, Plaintiffs are in privity with MIS for the purpose of the unjust enrichment claim (which was raised in the prior action). So the unjust enrichment claim is precluded here as well.

Plaintiffs object to this outcome with several arguments that all boil down to one contention: there cannot be privity here because Plaintiffs are in a legal position adverse to MIS. (Doc. 23, #142–45). For starters, Plaintiffs underlying premise that adverse parties cannot be in privity misstates the law—insurers are in privity with their insureds (via express or implied-at-law subrogation agreements), even though those same insurers have adverse interests to insureds in coverage actions. *See Pasco v. State Auto. Mut. Ins.,* No. 99AP-430, 1999 WL 1221633, at *7 (Ohio Ct. App. Dec. 21, 1999) (describing scenarios where the insurer controls an insured's defense in the underlying litigation—which would suffice to create privity for res judicata purposes—but the insurer nonetheless stands adverse to the insured because the insurer may raise grounds for denying coverage under the policy in a coverage suit). And, as explained above, Plaintiffs ignore that for the specific claims analyzed above, while they are seeking recovery for injuries they personally suffered, the mechanism they chose to vindicate those losses depends on raising the same rights and interests that MIS would have asserted against JMG and Refaei. And that Plaintiffs are reaching through MIS to try to hold JMG and Refaei liable on those claims means Plaintiffs are in privity with MIS.

But not all hope is lost, as Plaintiffs' argument about their having slightly distinct interests as third-party beneficiaries does compel a different result for the last two claims.

By prosecuting the breach-of-contract claim premised on the agreement recognizing Plaintiffs' beneficiary status, they are asserting personal rights they hold

because of the agreement. *Berge v. Columbus Cmty. Cable Access*, 736 N.E.2d 517, 532 (Ohio Ct. App. 1999) ("A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise. … [When the beneficiary status is intended, he] has enforceable rights under the contract."). Further "a judgment for or against the promisee in an action between him and the promisor does not preclude an action by the beneficiary on the obligation to him unless at the time the judgment was rendered the promisee had power to discharge the obligation." *Toll Bros. v. Century Sur. Co.*, 318 F. App'x 107, 112–13 (3d Cir. 2009) (cleaned up) (quoting Restatement (Second) of Judgments § 56(1) (1982)). So whether MIS had the power to discharge the obligation to Plaintiffs under the contract between it and JMG matters here. *Id.* ("A promisee's power to discharge an obligation otherwise due to a beneficiary terminates when 'the beneficiary changes his position in reliance on the promise, assents to it, or brings an action on it.'"). And MIS at least arguably lacked that power because Plaintiffs allegedly materially changed their position resulting in "among other things, delays in the ability to provide patient care and lost business." (Doc. 11, #86); Restatement (Second) of Contracts § 311, cmt. g (1981) ("If there is a material change of position in justifiable reliance on the promise, the change of position precludes discharge or modification of the contract without the beneficiary's consent."). For these reasons, based on the allegations in the Complaint, Plaintiffs have plausibly suggested that the interests Plaintiffs are protecting via this claim are legally distinct from those interests MIS holds (and therefore could vindicate) under the same agreement. Such a misalignment of interests means

Plaintiffs are not in privity for claim preclusion purposes, at least at the motion-to-dismiss stage. *Cf. O'Nesti*, 862 N.E.2d at 807.

Similarly, while MIS had sued JMG and Refaei for tortious interference of contract, Plaintiffs' claim for JMG's and Refaei's tortious interference of the same contract vindicates distinct contractual rights here. For MIS, JMG's and Refaei's failure to deliver the LINAC opened MIS up to liability for failing to perform on its contract with Plaintiffs. (*See* Doc. 11 ¶¶ 15, 27–29, #75, 77; Doc. 11-1). Whereas, for Plaintiffs, JMG's and Refaei's failure to deliver the LINAC barred them from receiving the benefit of the bargain—delivery of the machinery they needed for their Aguascalientes oncology center. (*See* Doc. 11 ¶ 30, #78). A tortious interference claim by each party would therefore vindicate distinct rights under the purchase agreement, even though both parties are signatories to the same contract. And these distinct rights again drive a wedge between Plaintiffs and MIS, such that they are not in privity with each other for claim preclusion purposes. *O'Nesti*, 862 N.E.2d at 807 (concluding that privity does not exist when individuals sign the same agreement but are "entitled to different benefits under the contract").

JMG and Refaei dispute this outcome by highlighting (at a high level of generality) that Plaintiffs and MIS are both signatories to a purchase agreement and both suits sought the "same general outcome." (Doc. 26, #187). But privity and claim preclusion analysis is more granular than reliance on these broad sweeping generalizations. *Wiggins Inv., Inc. v. Waterstreet Mgmt., LLC*, 2016-Ohio-4869, ¶ 16 (8th Dist.) (noting cases in Ohio where broad similarities between parties are not

enough to establish privity). And the mere existence of a contractual relationship does not alone establish that parties are in privity for claim preclusion purposes. *State v. Harding*, 2014-Ohio-1187, ¶ 27 (10th Dist.). Rather, the Court must ask whether the individuals "raise identical legal claims and seek identical rather than individually tailored results," which necessarily requires parsing the suit on a claim-by-claim basis. *O'Nesti*, 862 N.E.2d at 806; *GP Vincent II*, 68 F.4th at 522 n.4, 525 (Bea, J., concurring in the judgment) (highlighting simple examples in property and tort law in which privity for res judicata purposes changes based on the nature of the claims raised). As the Court did above, taking this matter claim by claim reveals that certain rights Plaintiffs seek to vindicate are identical to MIS, while others are unique to Plaintiffs themselves. That distinction divides those claims barred by claim preclusion from those that may proceed. Accordingly, JMG's and Refaei's contention, which lumps all the claims together, does not carry the day with these last two claims.

* * *

Altogether, the Court concludes that, on the allegations, the claim-preclusive effect of the judgment in MIS's case against JMG and Refaei bars some of the claims here. More specifically, all four res judicata elements under Ohio law are met for Plaintiffs' promissory estoppel (Count IV), unjust enrichment (Count V), trespass to chattel (Count VI), and conversion (Count VII) claims. But by contrast, Plaintiffs' fraudulent misrepresentation (Count VIII) and civil conspiracy (Count X) claims were not and could not have been litigated in MIS's suit and thus are not precluded here. And Plaintiffs are not in privity with MIS for their breach-of-the-third-party-

beneficiary contract (Count IX) and tortious interference (Count XI) claims, which means those claims are also not precluded from being litigated in this suit. The Court will therefore dismiss only those claims barred by res judicata with prejudice. The rest may continue apace.

**CONCLUSION**

For the reasons given above, the Court concludes that CdEO has standing to sue, Refaei is a proper Defendant in this action, and that the res judicata effect of the judgment in the prior MIS suit against JMG and Refaei bars only some of the claims here. Thus, the Court **GRANTS IN PART AND DENIES IN PART** JMG's and Refaei's Motion to Dismiss for Failure to State a Claim (Doc. 20). And it **DISMISSES WITH PREJUDICE** the promissory estoppel (Count IV), unjust enrichment (Count V), trespass to chattel (Count VI), and conversion (Count VII) claims in the Amended Complaint (Doc. 11) against JMG and Refaei.

**SO ORDERED.**

October 31, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**