# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**GORDON GRADO, M.D., et al.,**

     **Plaintiffs,**

         **v.**

**MEDICAL, INDUSTRIAL, AND
SCIENTIFIC PRODUCTS
CORPORATION, et al.,**

     **Defendants.**

**Case No. 1:24-cv-158**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Defendant Jose Rodriguez moves to dismiss wholesale the claims Plaintiffs Gordon Grado, M.D. and his company, Centro de Especialidad Oncologica (CdEO), have asserted against him. But because Rodriguez has abjectly failed to develop any of his arguments, the Court declines to do so. Accordingly, for the reasons explained more fully below, the Court **DENIES** Rodriguez's Motion to Dismiss (Doc. 32). That said, one of Rodriguez's grounds for dismissal warrants further inquiry. In particular, the Court needs clarity on whether Rodriguez is seeking to compel arbitration and, if so, whether he may have waived the right to arbitrate through litigation conduct or otherwise (and, more fundamentally, whether this Court, or instead the arbitrator, is the appropriate decisionmaker on that issue). So the Court will set an in-person hearing in the near future.[1]

---

[1] And the Court advises Rodriguez (who is proceeding pro se) to attend that hearing, either personally or through counsel, or risk the consequences of failing to participate in this litigation, which could include entry of default judgment against him.

## BACKGROUND[2]

This case revolves around Dr. Grado and his company's efforts to acquire a linear accelerator machine (LINAC) for their oncology clinic in Aguascalientes, Mexico. (Op. & Order, Doc. 33, #236–37). Grado and CdEO (which is Grado's wholly-owned company) perhaps could have sought to purchase the LINAC from Defendants Suleiman Refaei and Jordan Medical Group, LLC (JMG)—a seller of medical equipment (and also Defendants in this lawsuit, as explained below). (Am. Compl., Doc. 11, #74). But after past attempts to procure medical equipment from Refaei and JMG went awry, Grado "determined that he would never engage in dealings [with them] again." (*Id.* at #76). So this time around, Grado sought out Rodriguez and MIS to procure the machine, and in doing so he let them know "he would not do business with Refaei or JMG." (*Id.*). According to Grado, "Rodriguez, personally and [on] behalf of MIS" told Grado and CdEO that "MIS owned title" and possessed a LINAC available "for immediate sale."[3] (*Id.* at #75).

Based on these (mis)representations, Grado (whether personally or on behalf of his company is not entirely clear) executed a purchase agreement with MIS on

---

[2] As the Court mentioned in its previous Opinion and Order, (Doc. 33, #236 n.1), concerning Defendants Refaei and JMG's Motion to Dismiss, (Doc. 20), because this matter is before the Court on a motion to dismiss, the Court accepts the well-pleaded allegations in the Complaint as true, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

[3] Rodriguez made other representations as well. For example, that the LINAC had been "inspected," de-installed correctly, and was being "properly stored." (Doc. 11, #75).

June 5, 2020, through which he purchased the LINAC for $145,000.[4] (*Id.*; Purchase Agreement, Doc. 11-1, #90–92).[5] Grado's plan was to transfer ownership of the LINAC to CdEO (his company), and CdEO was then going to use it to replace a broken machine at the clinic. (*See* Doc. 11, #78).

But Grado's plan hit a snag. That's because, even though he paid in full, Rodriguez and MIS never delivered the LINAC. (*Id.* at #75–77). Perhaps that's because Rodriguez and MIS never actually had one. (*Id.* at #76). Behind the hollow promises of the Purchase Agreement, Rodriguez and MIS were engaged in more complicated machinations. In reality, they did not own or possess a LINAC as they had represented; rather, Refaei and JMG did. (*Id.*). That's not to say Rodriguez and MIS did not *intend* to deliver a LINAC to Grado. In fact, Rodriguez and MIS entered into two agreements with Refaei and JMG in an effort to secure delivery of a LINAC to Grado—a Sale Agreement, (Doc. 11-2), and a Third-Party Beneficiary Agreement, (Doc. 11-3).[6] (*See* Doc. 33, #236–37). And, as will prove important later, the Third-Party Beneficiary Agreement specified that the LINAC was being kept in storage at 9823 Cincinnati Dayton Road, West Chester Township, Ohio. (Doc. 11-3, #97). (It may

---

[4] Rodriguez and MIS accepted that payment and then transferred some or all of it to Refaei and JMG. (Doc. 11, #77). Grado also ended up paying $4,000 in storage fees. (*Id.* at #75).

[5] The Court may rely on the Purchase Agreement, as well as the Sale Agreement and Third-Party Beneficiary Agreement described below. That's because (1) they are written instruments that are referenced and attached to the Amended Complaint, and (2) they serve as the basis for Plaintiffs' claims. *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *1 n.3 (S.D. Ohio Jan. 4, 2024); Fed. R. Civ. P. 10(c).

[6] The Sale Agreement is dated July 22, 2020, (Doc. 11-2, #94), and the Third-Party Beneficiary Agreement October 12, 2020, (Doc. 11-3, #97), respectively.

still be there today.) So, at least based on these agreements, the Defendants seemed to have a plan to deliver the LINAC to Grado.

But apparently the plan went awry.[7] Grado never received a LINAC, whether from Rodriguez and MIS, or from Refaei and JMG. (Doc. 11, #77). What's more, he also did not receive a refund. Rather, Refaei and JMG demanded $25,000 *more* from him. (*Id.*). And once Refaei's and JMG's involvement became clear to Grado, that became its own separate problem, as Grado had (perhaps wisely if the allegations in the Complaint are accurate) disavowed transacting with them. (*Id.* at #76). Indeed, Grado claims that all Defendants knew that he "would not enter into any transaction if he were aware that either Refaei or JMG were involved." (*Id.*).

In the end, Grado and CdEO were forced to look elsewhere for a LINAC. (*See id.* at #78). The delays and separate business dealings to obtain that LINAC subjected them to additional regulatory hurdles and caused them to lose business and clientele in the interim. (*Id.*). As a result, Grado and CdEO initiated this action on March 25, 2024. (Doc. 1). In Plaintiffs' eleven-count Amended Complaint, they assert eight claims against Rodriguez and MIS: (1) breach of contract as to the Purchase Agreement (Count I); (2) fraudulent inducement (Count II); (3) negligent misrepresentation (Count III); (4) promissory estoppel (Count IV); (5) unjust enrichment (Count V); (6) fraudulent misrepresentation (Count VIII); (7) breach of

---

[7] MIS separately sued JMG and Refaei for failing to provide the LINAC to MIS for transfer to Grado, but the case was dismissed for failure to prosecute. (Doc. 33, #239; Order Dismissing Action for Failure to Prosecute, *Med., Indus. & Sci. Prods., Inc. v. Jordan Med. Grp., LLC*, No. 1:21-cv-555 (S.D. Ohio Oct. 18, 2022), Doc. 22).

contract as to the Sale Agreement and Third-Party Beneficiary Agreement (Count IX); and (8) civil conspiracy (Count X).[8] (Doc. 11, #78–87).

After some difficulty effectuating service, (*see generally* Doc. 29), Rodriguez and MIS (Rodriguez's company) were finally served on October 2, 2024. (*See* Docs. 30, 31). MIS had until October 23, 2024, to answer, but it did not do so. (Doc. 31). A few weeks later, Plaintiffs applied to the Clerk for entry of default against MIS, (Doc. 34), and the Clerk did so on November 21, 2025, (Doc. 37).

As for Rodriguez, he's opted to proceed pro se and now moves to dismiss. (Doc. 32). The motion leaves much to be desired. In it, Rodriguez broadly asserts what seem to be nine purported grounds for dismissal. (*See id.*). But those grounds overlap and muddle concepts. And, perhaps more problematically, Rodriguez devotes only a few sentences to each. He does not attack specific claims, but rather directs his fire at the Amended Complaint as a whole. And he cites no legal authority. Simply put, Rodriguez failed to fully develop any of his arguments.

Beyond that, after Plaintiffs responded, (Doc. 38), Rodriguez also passed up his opportunity to develop his positions in a reply. So, as things stand, Rodriguez has, at best, provided outlines of arguments—perhaps gestures toward arguments would be

---

[8] Plaintiffs also assert seven claims against both Refaei and JMG, and one claim against JMG but not Refaei. (Doc. 11, #81–87). Of those eight total claims, the Court has dismissed four, but allowed four to proceed. (Doc. 33, #260–61). The Court found that "the claim-preclusive effect of the judgment in MIS's case against JMG and Refaei" barred Plaintiffs' promissory estoppel (Count IV), unjust enrichment (Count V), trespass to chattel (Count VI), and conversion (Count VII) claims, as asserted against Refaei and JMG. (*Id.*). *See also supra* note 7. But the Court permitted the following claims against Refaei and/or JMG to move forward: fraudulent misrepresentation (Count VIII), breach-of-third-party-beneficiary contract (Count IX), civil conspiracy (Count X), and the tortious interference (Count XI) claims. (Doc. 33, #260–61).

a more accurate description. But that is a problem. Under the party-presentation principle, the Court is not in "the business of making arguments for parties"—even pro se parties. *Brashear v. Pacira Pharms., Inc.*, No. 1:21-cv-700, 2024 WL 3860465, at *4 n.5 (S.D. Ohio Aug. 19, 2024); *cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (explaining that courts may have a "modest initiating role" in departing from the party-presentation principle in pro se *criminal and habeas* cases). Nonetheless, the motion, such as it is, is ripe for review.

## LEGAL STANDARD

The Court construes Rodriguez's motion to dismiss as arguing that the Court lacks personal jurisdiction over him under Federal Rule of Civil Procedure 12(b)(2) in addition to pressing several arguments under Rule 12(b)(6).[9] So the Court will address the legal standards that apply to both, starting with personal jurisdiction.

### A.  Rule 12(b)(2) Standard.

Under Federal Rule of Civil Procedure 12(b)(2), "in the face of a *properly supported* motion for dismissal [for lack of personal jurisdiction], the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (emphasis added). Or, said slightly differently, if "[p]resented with a *properly supported* 12(b)(2) motion and opposition," "[t]he plaintiff bears the

---

[9] What Rodriguez actually says is that the "Court lacks subject matter jurisdiction over the claims, as Defendant [] Rodriguez has never conducted business in the state of Ohio, nor has any part of the alleged dispute occurred within this jurisdiction." (Doc. 32, #232). Plaintiffs assessed that Rodriguez intended to make personal jurisdiction argument, not a subject-matter jurisdiction one. (Doc. 38, #314). The Court agrees.

burden of establishing that [such] jurisdiction exists." *Id.* (emphasis added); *see also Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (explaining that "[m]otions to dismiss under Rule 12(b)(2) involve burden shifting" and that after a plaintiff makes a prima facie showing in the complaint, "[t]he burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence").

The nature of the plaintiff's burden turns on how the Court chooses, in its discretion, to handle the motion. *Malone*, 965 F.3d at 505. Before trial, the Court may decide to resolve the question on the written submissions, to permit additional discovery, or to hold an evidentiary hearing. *Id.* If the Court holds an evidentiary hearing, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction" by a preponderance of the evidence. *Theunissen*, 935 F.2d at 1458, 1465. But if the Court "rules on written submissions alone, the burden consists of a prima facie showing that personal jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (cleaned up). And a plaintiff may rely on just her allegations to meet that prima facie burden. *Malone*, 965 F.3d at 505. So when, as here, a defendant has neither submitted an affidavit nor requested a hearing on the topic, the Court rules on a Rule 12(b)(2) motion without consideration of any averments that merely contradict those jurisdictional allegations. *See id.* at 505–06. Additionally, the Court views the

pleadings in a "light most favorable to the nonmovant." *Carbone v. Kaal*, 140 F.4th 805, 809 (6th Cir. 2025).[10]

## B. Rule 12(b)(6) Standard.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quotation omitted).

A court analyzing a motion to dismiss generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). But if the pleadings reference a document that "is integral to the claims," the Court may consider that document "without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). These "written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is

---

[10] The Court notes, however, that at the motion-to-dismiss stage this is a threshold inquiry and that a plaintiff must still, by a preponderance of the evidence, prove that personal jurisdiction exists at trial. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

based." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). "[T]hey often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.* (cleaned up). "Even so, a court will not credit a document attached to a motion to dismiss [or other briefing] that is not integral to or referenced in the complaint, or is otherwise unlike quintessential examples of written instruments—for example, when the exhibit is unsigned and undated (i.e., lacks self-verifying qualities)." *Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *2 (S.D. Ohio Feb. 7, 2024) (cleaned up).

## C.    Pro Se Status.

One final point about the legal standards at issue here bears mention. Rodriguez is proceeding pro se, which means that the Court construes his filings liberally. *Hankins v. Waddle*, No. 1:21-cv-474, 2023 WL 3995931, at *1 (S.D. Ohio Apr. 19, 2023) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). But liberal construction does not mean that the Court develops arguments from scratch on substantive law. *See Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010). And pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## LAW AND ANALYSIS

While Rodriguez styles his motion to dismiss as advancing nine separate grounds for dismissal, so far as the Court can tell, he asserts only six independent grounds for dismissing Plaintiffs' claims against him. (*See* Doc. 32, #231–33). First,

he takes issues with the Amended Complaint's factual assertions, multiple times. (*See e.g.*, *id.* at #231 ("Plaintiffs' assertions are factually inaccurate … built on misrepresentations and unfounded allegation."), 232 ("Plaintiffs have provided no evidence to substantiate their claims.")). Second, he argues that there is a contract only between Grado and MIS, and that claims involving CdEO should be dismissed. (*Id.* at #231). Third, he states that he signed the contract between Grado and MIS in his "corporate capacity" so "[t]here is no basis to hold [him] personally liable." (*Id.* at #231–32). Fourth, he states that the Purchase Agreement had an arbitration agreement (although he does not move to compel arbitration), rendering this Court an improper venue. (*Id.* at #232). Fifth, he argues that Grado's claims are time-barred under the Purchase Agreement's one-year statute of limitations. (*Id.*). Finally, he states that the Court lacks personal jurisdiction over him. (*Id.*); *see also supra* note 9. The Court starts with Rodriguez's jurisdictional and venue-related arguments, then moves on to his other purported grounds for dismissing the Amended Complaint. None have merit.

## A.    Subject-Matter Jurisdiction and Choice of Law.

As explained in the Court's previous Opinion and Order, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(3). (Doc. 33, #243 n.6). The Court also previously decided to apply Ohio contract law (at least for the claims involving Defendants Refaei and JMG). (*Id.* at #242 n.5). The Court found that Ohio is the "forum with the most significant relationship[] to Plaintiffs' claims" because "this matter arises out of the Ohio Defendants' (JMG's and Refaei's) refusal to deliver the

10

LINAC" and the harms resulting from the actions that occurred in Ohio. (*Id.*). Still the Court reserved the right to revise and reconsider that determination. (*Id.*).

Since then, it has come to the Court's attention that the Purchase Agreement between Grado and MIS contains a choice-of-law provision identifying Illinois law.[11] (Doc. 11-1, #92). Rodriguez does not address, or seek to enforce, this choice-of-law provision. Plaintiffs, however, argue that Ohio law applies "because there is no 'reasonable basis' for this choice-of-law provision." (Doc. 38, #312 n.4).

In the Court's view, this is, at least currently, much ado about nothing. Plaintiffs claim Ohio law applies; Rodriguez is perhaps best described as agnostic. But neither has offered any reason why deciding that issue—i.e., which state's law applies—matters to any issue currently before the Court. So far as the Court can tell, nothing about either Grado's or Rodriguez's current arguments turns, in any way, on any unique aspect of either Ohio or Illinois law. Thus, at least for the time being, the Court declines to revisit its earlier determination. If at some point the difference actually matters, the Court leaves the parties free to re-raise the issue then.

## B.  Arbitration Provision and Venue Argument.

Under the Federal Arbitration Act (FAA), if a party moves to compel arbitration, the Court "must refrain from further action and must first determine whether there is a written agreement to arbitrate between the parties." *Southard v. Newcomb Oil Co., LLC*, No. 19-5187, 2019 WL 8111958, *4 (6th Cir. Nov. 12, 2019)

---

[11] The provision states: "This agreement shall be governed by and interpreted in accordance with the laws of the state of Illinois." (Doc. 11-1, #92).

(cleaned up). Here, the Purchase Agreement clearly contains an arbitration provision that appears to apply to the present dispute. (Doc. 11-1, #92). So arguably, that is the end of the matter.

But there are also reasons to doubt that is the case. First, Rodriguez may not actually be moving to compel arbitration.[12] True, he points to the arbitration provision and says that the Court should dismiss this case, but he says that is because the provision makes "this court an improper venue." (Doc. 32, #232). That seems to raise a challenge to venue under Federal Rule of Civil Procedure 12(b)(3). But if that's his argument, it doesn't work. "[P]arties should not use Rule 12(b)(3) to raise an arbitration agreement." *Boykin v. Fam. Dollar Stores of Mich.*, 3 F.4th 832, 838 (6th Cir. 2021).

Of course, Rodriguez is proceeding pro se, and thus gets the benefit of liberal construction. So perhaps the Court could read Rodriguez as impliedly requesting the Court to compel arbitration under 9 U.S.C. § 4. *See id.* at 837–38; *Witemyre v. GE Flight Efficiency Servs., Inc.*, No. 1:21-cv-314, 2021 WL 3079884, at *4, *6 (S.D. Ohio July 21, 2021) (explaining "dismissal … is an available remedy if the Court enters an order compelling arbitration"). But if that's the case, things get a bit more complicated. For example, the default rule is that "if the party opposing arbitration raises a genuine issue of material fact relating to whether the instant dispute is subject to arbitration, the court 'shall proceed summarily to the trial thereof.' But if

---

[12] Perhaps because an arbitration already occurred. (*See* Doc. 38, #315–16). Although, in contrast, Rodriguez claims that Plaintiffs are "in breach of the agreed arbitration provision" because they "failed to file any claim." (Doc. 32, #232). The parties' disagreement on this point further indicates why record evidence is needed to resolve this particular disagreement.

no such dispute exists, then the court 'shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Witemyre*, 2021 WL 3079884, at *4. In other words, the default rule is that courts, not arbitrators, decide substantive arbitrability questions. But the parties can change that default through the terms of their arbitration agreement. No one has addressed whether that has occurred here.

That may be because Plaintiffs, for their part, don't appear to argue that the claim is not arbitrable. That is, they are not challenging the *scope* of the arbitration agreement. Rather, they seem to argue that, not only is arbitration appropriate, but it has already occurred. (Doc. 38, #315–16). And they further claim that Rodriguez and MIS skunked that process by being "obstructionist, non-compliant with deadlines, willfully disobey[ing] arbitrator orders until threatened with sanctions, and … refus[ing] to pay even one penny of the arbitration fee and cost obligations." (*Id.* at #316 (emphasis omitted)). Plaintiffs go on to contend that, as a result of Rodriguez's and MIS's behavior, the arbitrator dismissed the arbitration without prejudice. (*Id.*). And they argue that Rodgriguez's and MIS's "conduct"—i.e., failure to pay fees—is an abandonment (perhaps waiver may be a more accurate term) of the right to arbitrate. (*Id.* (citing cases)).

That argument has at least some traction. "[E]ven where a dispute is subject to an arbitration agreement, a party can waive its ability to assert its rights under that agreement." *Witemyre*, 2021 WL 3079884, at *4. And a party waives its "right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596

U.S. 411, 419 (2022); *see also Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024) (explaining that, after *Morgan*, courts no longer consider whether the movant's conduct has prejudiced the opposing party). Along these lines, Plaintiffs correctly note that a failure to pay required arbitration fees is behavior that courts have treated as inconsistent with an intent to arbitrate. *See, e.g.*, *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*, No. 11-c-3274, 2012 WL 4513903, at *5 (N.D. Ill. Oct. 1, 2012).

But that only raises further questions. Courts often treat waiver arguments as implicating questions concerning procedural arbitrability, which are "presumptively for the arbitrator, not for the judge" to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002). Still, that's not always the case, for instance where a party's litigation conduct evinces waiver. *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, __ F.4th __, 2025 WL 1904525, at *2–3 (6th Cir. 2025) ("[C]ourts—and not arbitrators—decide whether a party has waived its right to compel arbitration through litigation conduct inconsistent with that right."). As for whether failure to pay arbitration amounts to a situation the Court, rather than the arbitrator, can decide, it appears to be fact dependent. *Compare Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199, 1201 (9th Cir. 2003) (holding that after an arbitrator found the defendant to be in default for failure to pay fees, the defendant could not seek to compel arbitration), *with Dealer Comput. Servs, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886–87 (5th Cir. 2009) (determining "[p]ayment of fees is a procedural condition precedent that the trial court should not review" (but where the arbitrator had

apparently not decided the issue of default)), *and Union Cent. Life Ins. Co. v. Andraos*, No. 1:09-cv-758, 2011 WL 6091771, at *5 (S.D. Ohio Oct. 21, 2011) (deciding that "whether defendants' nonpayment of arbitration fees amounts to a waiver of arbitration should be decided by the arbitrator, and not this Court," while recognizing *Sink*'s distinguishing facts), *R&R adopted*, No. 1:09-cv-758, 2011 WL 6100275 (S.D. Ohio Dec. 7, 2011).

But the problem for both parties—or really for the Court—is that the record provides no basis on which the Court could muddle its way through these various procedural thickets. As a result, and to err on the side of caution if Rodriguez is in fact moving to compel arbitration, the Court will set an in-person hearing to (1) determine if Rodriguez is trying to compel arbitration, (2) hear evidence concerning the alleged already-completed arbitration proceedings (along with any arbitral orders entered in that arbitration), and (3) determine whether this Court may, or whether an arbitrator instead must, decide whether Rodriguez has waived his right to arbitrate. The parties should be prepared to offer evidence or guidance on all three topics.

## C.     Personal Jurisdiction.

Next, Rodriguez advances a personal jurisdiction argument, which he has failed to support in any meaningful way. (*See* Doc. 32, #232). He merely asserts that he "has never conducted business in the state of Ohio" and argues the no part of this "dispute occurred within this jurisdiction." (*Id.*). He attaches no affidavits or evidence to support those claims. So all the Court needs to assess is whether Plaintiffs have

15

made a prima facie showing of personal jurisdiction over Rodriguez in the Amended Complaint—a "relatively slight" burden. *Malone*, 965 F.3d at 504–05 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). And because the Court decides the personal jurisdiction issue without conducting an evidentiary hearing or permitting jurisdictional discovery, where "the parties aver conflicting accounts of the salient facts, the Court resolves those conflicts in [Plaintiffs'] favor." *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1069 (S.D. Ohio 2022).

Since the Court is sitting in diversity, to make a prima facie showing of jurisdiction, Plaintiffs are required "to establish, with reasonable particularity, sufficient contacts between [Rodriguez] and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Malone*, 965 F.3d at 504. "Here, that means showing that [Rodriguez] purposefully availed [him]self of the privilege of conducting activities in the State of Ohio." *Id.* The Court finds that, despite Rodriguez's entreaties, Plaintiffs have made the necessary prima facie showing.

### 1. Ohio's Long-Arm Statute.

Ohio's General Assembly amended Ohio's long-arm statute, effective April 7, 2021. *Chulsky*, 583 F. Supp. 3d at 1071 n. 6. *Compare* Ohio Rev. § Code 2307.382(C) (1988) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."), *with* Ohio Rev. § Code 2307.382(C) (2020) ("In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the

16

United States Constitution."). While the "amendment [] raised the question whether a court must separately analyze the jurisdictional exercise under both the long-arm statute and the Due Process Clause," *Chulsky*, 583 F. Supp. 3d at 1071 n. 6, in the intervening years courts in this district have determined that such separate analyses are unnecessary, *see, e.g.*, *Zahara Ariel LLC v. Lionsgate Ent. Corp.*, No. 2:23-cv-1916, 2023 WL 4706188, at *2 (S.D. Ohio June 14, 2023); *Container Mfg. Ltd. v. Vobev, LLC*, No. 3:24-cv-150, 2024 WL 4444562, at *3–4 (S.D. Ohio Oct. 8, 2024). This Court agrees and finds that the plain language of this update makes Ohio's long-arm statute coterminous with the limits of the federal Due Process Clause. *See* Ohio Rev. Code § 2307.382(C). So the Court engages only in the constitutional analysis at length here.[13] *See Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

### 2. Due Process Clause.

To determine if a district court's exercise of personal jurisdiction is consistent with the Due Process Clause, the Court asks whether "the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice." *Chulsky*, 583 F. Supp. 3d at 1075 (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014)). "Personal jurisdiction under the Constitution comes in two flavors: (1) general personal jurisdiction (i.e., jurisdiction

---

[13] But the Court notes that even if the Ohio statute required a separate analysis, the Court would have personal jurisdiction under Ohio Revised Code § 2307.382(A), which confers jurisdiction over persons "[t]ransacting any business in the state," and which the Ohio Supreme Court has broadly construed. *Chulsky*, 583 F. Supp. 3d at 1072–73.

independent of whether the cause of action arises out of the defendant's contacts with the forum state), and (2) specific jurisdiction (i.e., jurisdiction over a cause of action that arises out of a defendant's contacts with the forum state)." *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 801 (S.D. Ohio 2020) (citing *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).

Start with general jurisdiction. It "exists when a defendant's relationship with the forum state is 'so "continuous and systematic" as to render [it] essentially at home' there." *Carbone*, 140 F.4th at 810 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Usually, for an individual, that's wherever they are domiciled. *Goodyear Dunlop*, 564 U.S. at 924. Here, Rodriguez clearly is not domiciled in Ohio. The Amended Complaint states that he is a resident of Chicago, Illinois, (Doc. 11, #73), and he has apparently been domiciled in Brazil since October 2023, (Doc. 24-2, #173–77). So general jurisdiction does not apply.

Instead, Plaintiffs must hang their hat on specific jurisdiction. To do so, they "must establish a 'substantial connection' among 'the defendant, the forum, and the litigation.'" *Carbone*, 140 F.4th at 810 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2017)). The Sixth Circuit uses a three-part test to determine whether such a substantial connection exists: "(1) the defendant must have purposefully availed himself of the privilege of acting in the forum state or purposefully caused a consequence [there]; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or consequences must have a substantial enough

18

connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Baker*, 480 F. Supp. 3d at 803. As to the first prong, purposeful availment occurs "where the defendant 'deliberately' has engaged in significant activities within a State … or has created 'continuing obligations' between himself and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citations omitted). Turning to the second, the Sixth Circuit recently clarified that this is a "lenient standard" that can be met when a plaintiff shows "that the defendant purposefully directed communications into the forum, and those communications form the heart of the cause of action." *Carbone*, 140 F.4th at 814 (cleaned up). Finally, in assessing reasonableness, courts typically consider five factors: "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the States in furthering fundamental substantive social policies." *Auto Place, LLC v. Cargill*, No. 1:19-cv-130, 2020 WL 1694996, at *5 (S.D. Ohio Apr. 7, 2020) (citing *Burger King*, 471 U.S. at 477).

Plaintiffs have satisfied their burden as to each of the three specific-jurisdiction prongs. Starting with the first, the Amended Complaint alleges facts showing that Rodriguez purposely availed himself of the privilege of acting in Ohio. This lawsuit turns on Rodriguez's alleged failure to deliver a LINAC. (Doc. 11, #77). That makes the LINAC central to this dispute. And as to the LINAC, Plaintiffs allege (and attach supporting documentation to suggest) that *all* Defendants, without

Grado's or CdEO's knowledge, entered into the Third-Party Beneficiary Agreement concerning the LINAC that was supposed to go to Grado. (*Id.*). In other words, Rodriguez allegedly sought to secure the LINAC that his contract with Grado required of him, by contracting with an Ohio LLC and Ohio resident (i.e., by executing the Third-Party Beneficiary Agreement and Sale Agreement). (*Id.* at #74; Doc. 33, #243 n. 6). Further, and perhaps more importantly, the Third-Party Beneficiary Agreement specified that Rodriguez's co-Defendants would keep the LINAC destined for Grado in storage at 9823 Cincinnati Dayton Road, West Chester Township, *Ohio*. (Doc. 11, #77; Doc. 11-3, #97). In other words, Rodriguez deliberately engaged in actions directed at satisfying his contractual obligations to Grado by arranging for the LINAC's storage in Ohio, and while it remained there, he had continuing obligations between himself and the Ohio residents who were maintaining it. That's enough to show purposeful availment for pleading purposes.

Rodriguez generically resists this finding by claiming that he "has never conducted business" in Ohio and that no "part of the alleged dispute occurred" here. (Doc. 32, #232). But as explained, based on the pleadings, that's just not the case. And at the pleading stage Rodriguez can't overcome the allegations in the Amended Complaint merely by argumentation. At the very least, he would need to provide an affidavit. Separately, while it is true that "the mere existence of a contract with a citizen of a foreign state is not enough to show purposeful availment," *Baker*, 480 F. Supp. 3d at 804, here the claims go beyond a contract between parties. Rather, the item at the center of this dispute, the LINAC, was stored in Ohio, and Rodriguez

20

agreed for it to be stored there. So the Court finds that Plaintiffs' Amended Complaint satisfies the first part of the specific jurisdiction test.

Plaintiffs succeed on the second and third parts of the test as well. Rodriguez communicated with Ohio parties to have the LINAC stored in Ohio—this is exactly "the heart of the cause of action." *Carbone*, 140 F.4th at 814 (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 617–18 (6th Cir. 2005)). And as to whether exercise of jurisdiction over Rodriguez is reasonable, the Court finds it is. While there may be a substantial burden for any defendant living in Brazil to participate in a litigation in Ohio (or any state for that matter), Ohio has an interest in adjudicating this dispute because it concerns a piece of equipment stored within its borders. Additionally, regarding the interstate judicial system's interest in efficient resolution of this controversy, it strikes the Court as most efficient to handle all of Plaintiffs' claims against the multiple Defendants in this action together. The Court, in sum, finds that it has specific personal jurisdiction over Rodriguez.

**D.    Statute-of-Limitations Argument.**

Rodriguez's statute-of-limitations argument is an "affirmative defense[], on which a [he] bears the ultimate burden of proof." *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014). And while such defenses "are susceptible to resolution on a motion to dismiss," that's normally the case only "if a plaintiff affirmatively pleads himself out of court." *Id.* at 504.

Here, Rodriguez has done nothing more than point to the presence of a contractually agreed upon statute of limitations, which is shorter than the statutory

limitations period. (Doc. 32, #232; Doc. 38, #313–14; *see also* Doc. 11-1, #92 ("No claim … arising out of or in any way connected with this agreement or the Equipment furnished to buyer may be brought more than one (1) year after the cause of action has accrued."[14])). Grado entered into the Purchase Agreement with MIS on June 5, 2020. (Doc. 11, #75). But when was the Purchase Agreement actually breached? In other words, at what point did Rodriguez's and MIS's non-delivery amount to a breach? Did the arbitration the parties (allegedly) engaged in toll the statute of limitations? These are questions for which the Court currently has no answers. Plaintiffs are correct that Rodriguez's argument "necessarily requires the Court to go beyond the pleading," (Doc. 38, #312), but where the Court would go at this point is unclear. Rodriguez's statute-of-limitations argument is thus premature.

### E.    Arguments Rooted in Inappropriate Factual Disputes.

The standard at this stage of the litigation is plausibility, not proof. *Iqbal*, 556 U.S. at 678. And when considering a motion to dismiss, the Court's role is "to examine the complaint" and discern whether a cognizable claim exists; its role is not to weigh the evidence. *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004). Rodriguez fundamentally misunderstands that motion-to-dismiss standard. Despite his assertions that Plaintiffs' claims are "factually inaccurate," (Doc. 32, #231), the Court construes the Amended Complaint in the light most favorable to Grado and CdEO, not the light most favorable to Rodriguez. *Bassett*, 528 F.3d at 430. More than

---

[14] Additionally, the Court questions whether this provision was even triggered given that the LINAC was never "furnished" to Grado or CdEO. (*See* Doc. 11-1, #92)

that, the Court assumes the well-pleaded allegations are true. *Id*. So all of Rodriguez's accusations of factual inaccuracies are misplaced and not proper grounds for dismissal. He will have a chance to prove up his competing version of the facts during discovery.

## F.      Contract between Grado and MIS.

As Plaintiffs point out, it's not clear from Rodriguez's Motion whether he "is arguing [CdEO] has no standing to pursue its claims against him, or that it is not the real party in interest." (Doc. 38, #309). But either way, as Plaintiffs also note, the Court previously handled and rejected similar arguments (albeit from other Defendants and concerning the Third-Party Beneficiary Agreement rather than the Purchase Agreement). (*See* Doc. 33, #243–46). That same analysis applies with equal force here. Therefore, Rodriguez's argument fails.

## G.      Corporate Veil Argument.

Rodriguez claims he acted in his corporate capacity and should receive the protections of "the corporate veil of [MIS]." (Doc. 32, #231–32). But much like co-Defendant Refaei, "all allegations discussing [Rodriguez's] actions are best understood as alleging that he took personal actions that harmed Plaintiffs." (Doc. 33, #246; *see also* Doc. 11, #75 ("Rodriguez, personally and [on] behalf of MIS, represented to Dr. Grado and [CdEO] …"), 77 ("Rodriguez … accepted full payment [and] never delivered the LINAC.")). Accordingly, "the Court declines to analyze those issues because the plausible inferences drawn from the Amended Complaint permit the Court to conclude for the purposes of a Rule 12(b)(6) motion" that Plaintiffs sued

Rodriguez "for his personal actions." (Doc. 33, #248 n. 9). Like his co-Defendants, Rodriguez may re-raise these arguments at the summary-judgment stage and reference evidence to support his claims that he acted in his corporate capacity. (*Id.* a #247–48).

\* \* \*

Altogether, Rodriguez argued for the Court to wholesale dismiss Plaintiffs' Amended Complaint; instead, the Court wholesale rejects his motion. Rodriguez's arguments are underdeveloped. And while the Court can perhaps conceive of various arguments under which he may have prevailed, "under the party-presentation principle, the Court cannot enter the business of making arguments for parties." *Cincinnati Enquirer v. United States Dep't of Just.*, No. 1:23-cv-682, 2025 WL 71677, at \*6 (S.D. Ohio Jan. 10, 2025) (quotation omitted); *cf. Sineneng-Smith*, 590 U.S. at 375–76. That is true of pro se litigants, just like any other litigant. *See Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## H.    Entry of Default Against MIS.

The pleadings are now settled and discovery is set to begin for three of four of Defendants in this suit. What about the fourth? Recall that, after an arduous path to effectuate service, Plaintiffs served MIS on October 2, 2024. (Doc. 31; *see also* Docs. 25, 29). MIS had until October 23, 2024, to answer. (Doc. 31). It didn't do so.

24

When a defendant fails to "plead or otherwise defend" in a timely manner, Fed. R. Civ. P. 55(a), a plaintiff must take two steps to advance an action. First, the plaintiff must seek an entry of default from the Clerk of Court. Fed. R. Civ. P. 55(a); S.D. Ohio Civ. R. 55.1(a). Second, after the Clerk enters default against a defendant, the plaintiff must then move for default judgment within a reasonable time thereafter. Fed. R. Civ. P. 55(b); S.D. Ohio Civ. R. 55.1(b).

Plaintiffs have done the former, but not the latter. On November 13, 2024, Plaintiffs applied to the Clerk to enter default against Defendant MIS. (Doc. 34). The Clerk filed an entry of default a few days later. (Doc. 37). At that point in time, MIS was several weeks late in failing to answer. (*See* Doc. 31).

Now, it's been several months since the Clerk entered default against MIS, but Plaintiffs have yet to move for default judgment. So Plaintiffs must take the second step if they wish to advance their claims against MIS. Otherwise, the Court will find Plaintiffs have failed to prosecute their claims against MIS. Accordingly, the Court **ORDERS** Plaintiffs, **within twenty-one days (on or before August 26, 2025)**, to either (1) move for default judgment, or (2) show good cause in writing why the Court should not find they've failed to prosecute their claims against MIS.

## CONCLUSION

For the reasons given above, the Court **DENIES** Rodriguez's Motion to Dismiss (Doc. 32). Because Defendant MIS is in default, the Court also **ORDERS** Plaintiffs to either (1) move for default judgment, or (2) show good cause in writing why the Court should not find they've failed to prosecute their claims against MIS

**within twenty-one days (on or before August 26, 2025)**. Consistent with this Opinion and Order, the Court will reach out to the parties to set an in-person hearing concerning the arbitration issue.

**SO ORDERED.**

August 5, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**